UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUDASSAR IQBAL,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF STATE, *et al.*,

    *Defendants*.

Civil Action No. 23-2350 (LLA)

**MEMORANDUM OPINION**

    Mudassar Iqbal brings this action against the Department of State and several government defendants (collectively, "Defendants") in their official capacities.  Mr. Iqbal alleges that his visa application was unreasonably delayed and unlawfully withheld.  ECF No. 7.  He brings claims under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1151 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201, to compel Defendants to adjudicate his visa application.  ECF No. 7 ¶¶ 78-94; *id.* at 17, Prayer for Relief.  Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 11, and Mr. Iqbal has moved to compel discovery, ECF No. 17.  For the reasons explained below, the court will grant Defendants' motion and dismiss the case under Rule 12(b)(6), and it will deny Mr. Iqbal's motion to compel.

    **I.**    **Background**

    The court draws the following facts, accepted as true, from Mr. Iqbal's complaint.  *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).  It further takes

judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

Mr. Iqbal was born in Pakistan and is a Norwegian citizen. ECF No. 7 ¶ 31. He is a Software Architect at a software company based in the United States. *Id.* Mr. Iqbal was initially hired at the company's Norwegian subsidiary in May 2014. *Id.* ¶ 32. In 2018, he moved to the United States on an L-1B visa—available to individuals with "specialized knowledge" of a company's services, 8 C.F.R. § 214.2(l)(1)(i)—and remained in the United States for approximately four years. *Id.* ¶¶ 33, 35. Mr. Iqbal's L-1B visa was renewed through June 1, 2023. *Id.* ¶ 34. In 2022, he applied for an H-1B visa to continue working in the United States. *Id.* ¶ 38. The L-1B visa allows specialized workers to transfer to a United States subsidiary of a multinational company from a foreign subsidiary for a one-year period with the ability to extend the visa to a maximum of five years. *See* U.S. Dep't of State, *L-1B Intracompany Transferee Specialized Knowledge*.[1] The H-1B visa allows specialized workers to work at a United States company for a three-year period with the ability to extend the visa to a maximum of six years—without the transfer requirement of the L-1B visa. *See* U.S. Dep't of State, *H-1B Specialty Occupations, DOD Cooperative Research and Development Project Workers, and Fashion Models*.[2]

An H-1B visa requires the applicant to complete numerous steps. *See id.* Applicants must receive both an approved labor certification and an approved visa petition from their employer and fill out various forms. *Id.* The applicant bears the burden of showing that they are eligible for the visa. 8 U.S.C. § 1361. Typically, an applicant for an H-1B visa must undergo an in-person

---

[1] *Available at* https://perma.cc/2EXC-XZUL (last visited July 22, 2024).
[2] *Available at* https://perma.cc/63T8-88PU (last visited July 22, 2024).

interview with a consular officer. *Id.* § 1202(h). At the end of the interview, State Department regulations require that the consular officer either issue or refuse the visa. 22 C.F.R. § 41.121(a); *see Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022). However, if a consular officer determines that he needs further information, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In July 2022, Mr. Iqbal returned to Norway to participate in a visa interview at the American Embassy in Oslo. ECF No. 7 ¶ 39. United States Citizenship and Immigration Services ("USCIS") had already approved his employer's H-1B petition filed on his behalf. *Id.* ¶¶ 36-37. At the interview, the Consular Officer informed Mr. Iqbal that his case required further administrative processing. *Id.* ¶ 39. The Officer also requested Mr. Iqbal's curriculum vitae, education documents, and articles he had published in his field, which he provided the same day. *Id.* ¶ 40. Since November 2022, Mr. Iqbal and his employer, through counsel and Members of Congress, have sought updates from the Embassy regarding his visa application. *Id.* ¶¶ 41-43. Mr. Iqbal has not received any substantive updates on his application's status; rather, he has been told that his application is still in a state of administrative processing. *Id.* ¶¶ 7, 44. He alleges that "administrative processing is relatively rare for such H-1B visas where the underlying petition has already been approved by USCIS" and that most administrative processing, when it does occur, is resolved within sixty days of the visa interview. *Id.* ¶¶ 50-51.

As a result of this delay, Mr. Iqbal has been forced to pay rent and other bills in both California and Norway. *Id.* ¶ 67. He has been separated from his wife, who is unable to live in

---

[3] *Available at* https://perma.cc/44NK-RVZE (last visited July 9, 2024).

Norway.  *Id.* ¶ 69.  Mr. Iqbal has been forced to delay a medical procedure and miss medical appointments that were scheduled in California.  *Id.* ¶ 70.  His remote work status has limited the projects he can take on and prevented him from attending conferences, trainings, and business meetings "critical" to his career.  *Id.* ¶¶ 71-72.  Mr. Iqbal alleges that he may be forced to move to Canada to continue his employment if the visa delay continues.  *Id.* ¶ 73.

In August 2023, Mr. Iqbal filed suit against the Department of State and several government employees in their official capacities: Antony J. Blinken, Secretary of State; Rena Bitter, Assistant Secretary for Consular Affairs; Sharon Hudson-Dean, Deputy Chief of Mission at the U.S. Embassy in Norway; and "Jane/John Doe," Consular Officer at the U.S. Embassy in Norway.  *Id.* at 1.  Mr. Iqbal seeks an order compelling Defendants to adjudicate his visa application under the INA, 8 U.S.C. § 1571(b); the APA, 5 U.S.C. § 702; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  ECF No. 7 ¶¶ 78-94; *id.* at 17, Prayer for Relief.

## II.   Legal Standard

The plaintiff bears the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

### III. Discussion

Defendants raise myriad arguments for dismissal under Rules 12(b)(1) and 12(b)(6), including arguments about standing, nonreviewability, non-justiciability, and failure to state a claim. *See* ECF No. 11. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464 (D.D.C. June 4, 2024); *Al-Gharawy*, 617 F. Supp. 3d; *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021)

#### A. Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that a plaintiff "must establish that [he] [has] standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (first quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); then quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the constitutional requirement for standing, a plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*,

749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61). Defendants argue that Mr. Iqbal has not suffered an injury-in-fact, ECF No. 11 at 7-13; that there is no causal connection between the alleged injury and several of the Defendants, *id.* at 5-6; and that the alleged injury cannot be redressed by this court, *id.* at 13-14. The court disagrees.

As to injury, Defendants argue that Mr. Iqbal's claims are based on a procedural injury that is not connected to any substantive harm, primarily because he does not have a right to enter the United States. *Id.* at 7. Courts in this district have consistently rejected this argument, concluding that a plaintiff suffers an injury-in-fact when an unreasonable delay in visa adjudication causes financial or other hardship. *See Ameer*, 2024 WL 2831464, at *3 (finding that a processing delay on an H-1B visa application resulting in forced unpaid leave and potential termination constituted an injury-in-fact); *see also, e.g.*, *Kahbasi*, 2024 WL 3202222, at *3; *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Khan v. Blome*, No. 22-CV-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). Here, Mr. Iqbal has tethered the procedural right to timely visa processing to concrete monetary and other harms. He alleges financial harms such as being forced to pay rent and bills in both the United States and Norway, ECF No. 7 ¶ 67; personal harms such as being separated from his family, *id.* ¶ 69; professional harms such as limitations on projects and an inability to attend "critical" conferences and meetings, *id.* ¶¶ 71-72; and physical harms such as missed and delayed medical appointments, *id.* ¶ 70.

Defendants next argue that Mr. Iqbal improperly named the State Department, Secretary of State, and Assistant Secretary of State as defendants and that they should be dismissed from the case because they are unable to provide the requested relief of visa adjudication. ECF No. 11

6

at 5-6.  Whether construed as an argument about causation or redressability, the court concludes that each of the defendants Mr. Iqbal has named are proper.

"To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief."  *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).  Defendants correctly acknowledge that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  ECF No. 11 at 5 (emphasis omitted); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  But Mr. Iqbal does not seek to have his visa adjudication revised; rather, he seeks to have the adjudication completed.  ECF No. 7 at 17, Prayer for Relief.  As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing.  *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 10.  "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'"  *Id.* (quoting 5 U.S.C. § 555(b)).  Mr. Iqbal alleges that "all consular officers, including Defendant Hudson-Dean, are employees of Defendant State Department and fall under the supervision and control of Defendants Blinken and Bitter in the performance of their duties."  ECF No. 7 ¶ 55.  Because the State Department, Secretary of State, and Assistant Secretary of State either do or could play a role in the pace of visa adjudications, an order from this court directing them to move more quickly would likely redress Mr. Iqbal's harms.  Accordingly, Mr. Iqbal has alleged the requisite connection between these Defendants and his alleged injury, and the case may proceed against them.  *See Lujan*, 504 U.S. at 561.  The court notes, too, that the Deputy Chief of Mission for the U.S. Embassy in Norway and the "John/Jane Doe" Consular Officer named as defendants

in this case have clear roles in the pace of Mr. Iqbal's visa adjudication as they manage the relevant embassy and conducted his visa interview—and Defendants do not object to their inclusion. ECF No. 7 ¶¶ 53-54; ECF No. 11 at 5-6, 14; *see Ameer*, 2024 WL 2831464, at *4 (finding that a court order directed to the Deputy Chief of Mission of the relevant embassy might redress the plaintiff's injuries). Thus, each of the named defendants is proper.

Finally, Defendants argue that Mr. Iqbal's claimed injury is not redressable because he has offered nothing to suggest that adjudication of his application would result in anything other than denial, and thus a court order "would not redress Plaintiff's supposed procedural harm (delay) or Plaintiff's ultimate harm (the inability to travel to the United States)." ECF No. 11 at 14. The court disagrees. "Courts in this District have routinely rejected this argument, which misunderstands . . . the relief Plaintiffs seek." *Rostamnia v. Blinken*, No. 23-CV-1638, 2024 WL 1328462, at *3 (D.D.C. Mar. 28, 2024) (quoting *Rashidian*, 2024 WL 1076810, at *5); *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5. Mr. Iqbal seeks the final processing and adjudication of his visa application, not a specific outcome, as relief.[4] ECF No. 7 at 17, Prayer for Relief. An order by this court compelling adjudication of Mr. Iqbal's visa—not "re-adjudicat[ion]," ECF No. 11 at 13, but rather completion of the process—would remedy Mr. Iqbal's injuries by freeing him from the "processing" stage.

---

[4] Included among the introductory factual allegations in his complaint, Mr. Iqbal asks the court to "direct Defendants to adjudicate Plaintiff's request promptly and award Plaintiff an H-1B visa through Oslo Embassy." ECF No. 7 ¶ 19. The court cannot compel a particular outcome with respect to Mr. Iqbal's visa application. *See Saavedra Bruno*, 197 F.3d at 1164. Because Mr. Iqbal does not make this request in his Prayer for Relief, the court construes the complaint as a request for adjudication only.

B. **Consular Nonreviewability, Non-Justiciability, and Non-Discretionary Duty**

Defendants next raise a set of non-standing threshold challenges, including (1) that the doctrine of consular nonreviewability bars Mr. Iqbal's claims, ECF No. 11 at 14-18; (2) that "decisions relating to the exclusion of non-citizens abroad are not subject to judicial review," *id.* at 12; and (3) that Mr. Iqbal fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 18-24. The court is unpersuaded.

Defendants first argue that the doctrine of consular nonreviewability prevents this court from reaching the merits. ECF No. 11 at 14-18. In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024. "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Mr. Iqbal's visa application remains in administrative processing. ECF No. 7 ¶ 44. The doctrine thus does not apply.

Next, Defendants argue that a challenge to a condition of entry into the United States presents a non-justiciable question that this court cannot entertain. ECF No. 11 at 12-13. This appears to be a restatement of their argument about consular nonreviewability and fails for the same reasons. To the extent Defendants are raising a broader argument that Mr. Iqbal has no recourse to complain about administrative delay because the ultimate decision might be non-justiciable, that cannot be squared with the APA, which allows a plaintiff to seek judicial review when an agency has failed to act. 5 U.S.C. § 706(1); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *Ahmadi*, 2024 WL 551542, at *4 n.6.

Finally, Defendants argue that Mr. Iqbal failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 11 at 18-19 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Defendants argue that Mr. Iqbal cannot identify a non-discretionary duty to adjudicate a visa application. ECF No. 11 at 20. But Defendants misstate the relevant duty. The duties Defendants refer to—adjudicating a specific visa application or re-adjudicating an application, *id.*—may be discretionary. But Mr. Iqbal does not request such relief. Rather, he claims that Defendants have a non-discretionary duty to process his application "promptly" under 22 C.F.R. § 41.106, within thirty days under 8 U.S.C. § 1571(b), and within a reasonable time under 5 U.S.C. § 555(b). ECF No. 7 ¶¶ 79-80, 85. Several courts in this district have agreed with Mr. Iqbal's conclusions, explaining that "both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian*, 2024 WL 1076810, at *5; *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023) *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary

duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

## C.     Unreasonable Delay

On the merits of this case, Defendants argue that Mr. Iqbal has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 11 at 25. Mr. Iqbal brings claims under the APA and the Mandamus Act.[5] The standards for obtaining relief under either statute are the same. *See Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")). Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

---

[5] Mr. Iqbal stylizes his complaint in the form of four causes of action, including a deprivation of his rights under the INA, ECF No. 7 ¶¶ 78-81, and a request for final judgment under the Declaratory Judgment Act, *id.* ¶¶ 93-94. The INA claim appears to restate arguments typically brought under the APA or Mandamus Act. The Declaratory Judgment Act creates a remedy in the form of declaring a plaintiff's rights. 28 U.S.C. § 2201(a). Because neither Mr. Iqbal's INA claim nor his Declaratory Judgment Act claim is a freestanding claim allowing for relief, the court proceeds with a typical unreasonable delay analysis focused on the APA and Mandamus Act. *See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 20 n.8 (D.C. Cir. 2008) ("We continue to construe complaints liberally by interpreting ambiguous text in the complaint in the light most favorable to the plaintiff.").

11

> court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).

At the outset, Mr. Iqbal argues that application of the *TRAC* factors is premature at the motion-to-dismiss stage. ECF No. 13 at 19-20. The court is unpersuaded. It is the majority view in this Circuit that "application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." *Bega v. Jaddou*, No. 22-CV-2171, 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa*, 80 F.4th; *see, e.g.*, *Rostamnia*, 2024 WL 1328462, at *5 (applying *TRAC* factors in an unreasonable delay analysis at the motion-to-dismiss stage); *Rashidi v. Dep't of State*, No. 23-CV-1569, 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023) (same). Such is the case here.[6]

The first two factors—requiring agencies to follow "a rule of reason" related to their timelines, and the influence of a congressionally-imposed timeline—are typically considered

---

[6] For this reason, the court does not credit Mr. Iqbal's argument that limited discovery is needed to decide this case and accordingly will deny his motion to compel discovery. *See generally* ECF Nos. 17, 19. As explained, the court credits the complaint's plausible factual assertions in adjudicating the present motion. *See Iqbal*, 556 U.S. at 678. Discovery will not cure the defects in the complaint. *See Rashidi*, 2023 WL 6460030, at *5 ("[B]ecause Plaintiffs failed to adequately plead that a final decision on their visa applications has been unreasonably delayed, their Complaint shall be dismissed.").

together. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). In essence, these two factors require the court to consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay.'" *Rashidian*, 2024 WL 1076810, at *6 (quoting *Khazaei*, 2023 WL 6065095, at *6). In analyzing these factors, the court may consider the "complexity of the task at hand." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Both factors favor Defendants.

Mr. Iqbal suggests that there is a congressional timeline based on 8 U.S.C. § 1571(b). ECF No. 7 ¶ 80. That subsection provides:

> It is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b). However, this guidance is not binding. *See Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement" and concluding that a four-year delay was not unreasonable). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has found a four-year delay not unreasonable. *See Da Costa*, 80 F.4th at 342. The court is satisfied that Defendants utilize a rule of reason that does not constitute unreasonable delay. At the time he filed this complaint, Mr. Iqbal had been waiting approximately sixteen months since his visa interview. ECF No. 7 ¶ 8. Although such a timeline may be frustrating, it does not constitute an unreasonable delay when compared to relevant cases. *See, e.g.*, *Shen*, 2021 WL 1246025, at *8 (finding a delay of twenty-one months for a nonimmigrant visa not unreasonable).

13

And, although Mr. Iqbal alleges that this type of delay in administrative processing is rare for H-1B visas where "the underlying petition has already been approved," ECF No. 7 ¶ 50, courts have not made such distinctions when conducting this analysis. *See Nili v. Blinken*, No. 23-CV-2929, 2023 WL 7922787, at *4 (D.D.C. Nov. 16, 2023) (rejecting the plaintiff's argument that his case was distinguishable from other unreasonable delay cases on the grounds that he had applied for an H-1B) visa, his employer's petition for an H-1B visa had been approved, and he had lived in the United States for eight years on previously approved visas).[7]

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context, *Da Costa*, 80 F.4th at 340, and also favors Defendants. The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Mr. Iqbal to the front of the visa-adjudication line would merely reorder all applicants with no change in the overall timeline. Mr. Iqbal claims, to the contrary, that "whatever the specific cause of the delays here, these delays are clearly not 'normal' for nonimmigrant visa applicants like Plaintiff such that he can be accused of attempting to skip any semblance of a line for visa applicants." ECF No. 7 ¶ 63. Rather, "[he] is one among a small number of such applicants subjected to this kind of processing, and thus has effectively

---

[7] Nor will the court opine on Mr. Iqbal's allegations that "few issues remained" to make a decision regarding his visa, ECF No. 7 ¶ 46, or that his case is "a simple one," ECF No. 13 at 23, because it seems to be the number of applications, not the complexity (or lack thereof) of any individual application, exacerbating the delay. *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) ("Even something as simple as buying a concert ticket may take hours if there are hundreds of people in line ahead of you.").

been placed *last* in line—or, at least, far behind others who applied, sometimes much later." *Id.* (emphasis in original). That the line is short is inapposite, however. The court may not reorder applicants. *See Uranga v. USCIS*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020) (granting a motion to dismiss an unreasonable-delay claim because there is "'no basis for reordering agency priorities'" where a judgment for the plaintiff would only advance his application and "not cure the agency's 'incompetence, if it exists and even if it is severe'" (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76)). Compelling Defendants to process Mr. Iqbal's visa application presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). Additionally, "deference must be given to the State Department's priority-setting and resource allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71 (citing *Milligan*, 502 F. Supp. 3d at 319). It would be improper for the court to intervene and expedite Mr. Iqbal's application. The fourth *TRAC* factor thus weighs heavily in favor of Defendants.

The third and fifth factors concern the impacts of delay on visa applicants. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). Mr. Iqbal claims real human and financial consequences of the processing delay, such as paying rent and bills in both the United States and Norway, ECF No. 7 ¶ 67; being separated from his family, *id.* ¶ 69; being unable to work on certain projects or attend conferences and meetings, *id.* ¶¶ 71-72; and missing or delaying medical appointments, *id.* ¶ 70. These harms are truly unfortunate and undoubtedly frustrating. However, without more facts suggesting otherwise, these harms do not threaten

15

Mr. Iqbal's physical health and wellbeing in a manner compelling enough to overcome Defendants' advantage on the more important factors. *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi*, 2024 WL 551542, at *6 (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Mr. Iqbal does not allege bad faith, so this factor is neutral. *See* ECF No. 7; ECF No. 13 at 26.

\*   \*   \*

As the D.C. Circuit explained in *Da Costa*, the delays in visa adjudications are "troubling." 80 F.4th at 344. But after weighing the *TRAC* factors, the court concludes that Mr. Iqbal has not plausibly alleged that his visa delay is unreasonable. Accordingly, the court will dismiss the complaint.

### IV.   Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 11, and will deny Plaintiff's motion to compel discovery, ECF No. 17. A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 25, 2024